SMITH, by Guardian *ad litem,* Appellant, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.

*March 13—May 1, 1945.*

For the appellant there was a brief by *J. C. Raineri* of Hurley and *Lehner & Lehner* of Oconto Falls, and oral argument by *Adolph P. Lehner* and *Howard N. Lehner.*

*John F. Baker* of Milwaukee, for the respondent.

MARTIN, J.   On May 17, 1943, plaintiff was a passenger on defendant's train from Chicago to Milwaukee.   In alighting from the train at its Milwaukee station, she fell from the steps and was injured.   It is alleged that defendant's conductor in charge of said train failed in his duty to plaintiff as a passenger and was negligent in that he: (a) Failed to have a stool or other contrivance at the foot of the steps to enable the plaintiff to dismount in safety; and (b) neglected to assist plaintiff in dismounting after he had proffered his help.   During the course of the trial plaintiff's counsel withdrew the allegation of negligence for failure to have a footstool between the lower step of the coach and the platform. Therefore, the plaintiff's case rests entirely on the alleged failure of the conductor to assist plaintiff while alighting from the coach in which she was a passenger.

On the date in question plaintiff was about twenty years of age, a high-school graduate, in good health, weighed one hundred fifteen pounds, was five feet five inches tall.   She carried no luggage, was carrying her purse under her right arm.  ·  The accident occurred about 3 o'clock in the afternoon. There were four steps.   The bottom one was seventeen inches from the platform.   Plaintiff testified that the steps were dry and there was nothing on them to trip or stumble over or on which to catch her foot; the steps were nice, easy ones.

Plaintiff further testified:

"*Q*. When you got to the vestibule what did you do? *A*. I started walking down the steps.   And I was on the second from the bottom step, and I noticed that the conductor reached out his right hand to help me.   And I let go of the railing with my left [hand] and extended it to the conductor

so that he could help me. And in trusting my care in him I looked down at the steps to see where I was going, and I fell and landed on the platform."

She testified that she did not ask the conductor to help her; that she did not say anything to the conductor, and he did not say anything to her. She was asked:

"*Q.* And there wasn't anything about your appearance that you know of, that would lead the conductor to think that you needed any help, was there? *A.* Certainly not."

There was no contact between the conductor's hand and plaintiff's hand or arm before she fell. In a signed statement given by the plaintiff on May 25, 1943, relative to the accident, she said:

"I know the conductor stood at the foot of the steps, and stood to my left side. I was on the second step from the top, when this conductor reached up to take hold of my left arm. He never got hold of my arm, and as he reached for my arm, I let go of the hand railing and fell off the coach steps. I would say that I fell from the second top step. . . . I had on a pair of white sandals, with high heels. . . . As I slid down the steps I caught both heels on the edge of the steps. . . . All I can say about the cause of this fall is that it was caused because I took my hand off the handrailing, and this was done before the conductor took hold of my arm."

The foregoing statement was offered and received in evidence.

The conductor testified that when the train pulled into the Milwaukee station plaintiff and a girl companion were in the tap car; that they came from the tap car into the vestibule of the first coach; that he noticed plaintiff when she stepped down on the first step; that in making this step the heel came off one of plaintiff's shoes and threw her forward; that at the time he was on the platform at the lower step, standing to the right of the steps as you looked up—to plaintiff's left as she came

down; that when the heel came off of plaintiff's shoe and threw her forward he grabbed her as she came down; that they both fell on the platform; that after they had fallen he saw the heel of plaintiff's shoe on the first step; that he picked it up, gave it to her, and helped her into the depot. Plaintiff denied at the trial that the heel had broken off her shoe. However, she admitted that the heels of both shoes were loose.

It is elementary that when reasonable men may honestly draw from the facts different conclusions upon the ultimate question of fact at issue, the determination of that question is for the jury. *Chippewa Falls Hotel Co. v. Employers L. A. Corp.* 208 Wis. 86, 89, 241 N. W. 380.

Giving plaintiff's evidence the most favorable construction which it will bear, does it support the jury's finding of negligence on the part of defendant's conductor? An inference must be drawn from established facts which logically support the same. *Wm. Esser & Co. v. Industrial Comm.* 191 Wis. 473, 477, 211 N. W. 150. Before there can be negligence there must be a breach of duty owing by the person against whom the claim of negligence is made; in the instant case, the defendant's conductor. In *Gardner v. Chicago & M. E. R. Co.* 164 Wis. 541, 544, 159 N. W. 1066, the court said:

"Plaintiff was a woman about forty-six years of age, in good health, and burdened with only a light handbag when she fell, and the car was standing still at a terminal station. Under such circumstances no duty devolved upon defendants to assist her in alighting."

Plaintiff testified:

"*Q.* You weren't going to lean on him until you got down to the bottom step, were you? *A.* I expected to help myself, but I expected some assistance from him.

"*Q.* That is, you mean from the bottom step to the platform, is that what you mean? *A.* That is what I mean."

In *Dorcey v. Milwaukee E. R. & L. Co.* 186 Wis. 590, 593, 203 N. W. 327, the court said:

"Before the defendant charged can be held guilty of fault it must be pointed out what duty, if any it owed, it failed to perform. We are cited to no case and we know of no practice which makes it the duty of a street railway company to assist passengers in alighting from its cars where they are in the possession of their full senses, are intelligent, able-bodied and under no disability. There was nothing in the circumstances of this case to lead the conductor, who was in the place designated for him, to suppose that the plaintiff was in need of help in alighting from the car. She was a strong, vigorous, able-bodied woman, and it was quite apparent that her injuries, though painful and serious, are the result of unavoidable accident."

In 10 Am. Jur. p. 231, sec. 1384, the rule is stated as follows:

"The mere fact that a passenger is a female does not, in the absence of any special circumstances, impose on the carrier the duty to assist her to alight, nor does it create any liability upon its part for injuries sustained by such passenger in leaving or boarding a car, where there is no negligence of the carrier contributing thereto. The duty to assist a passenger on or off a train may arise, however, in the case of a woman traveling with heavy hand baggage."

In 55 A. L. R. 389, in the annotation as to the duty and liability of carriers to assist passengers to board or alight from car or train, it is stated that:

"The rule is universal that ordinarily there is no duty resting on a carrier of passengers to assist a passenger in boarding or alighting from its train or car." Citing cases from many jurisdictions, including *Gardner v. Chicago & M. E. R. Co.,* supra, and *Dorcey v. Milwaukee E. R. & L. Co.,* supra.

Plaintiff argues that recovery may be had under the decisions of this court in *McDermott v. Chicago & N. W. R. Co.* 82 Wis. 246, 251, 52 N. W. 85, and *Werner v. Chicago &*

*N. W. R. Co.* 105 Wis. 300, 81 N. W. 416. In the *McDermott Case,* page 251, the court said:

"It is the duty of a common carrier of passengers to provide and maintain safe alighting places, and it must respond in damages to a passenger who, without contributory fault on his part, is injured by a negligent failure to perform this duty. It is the duty of the railway carrier to make it safe for its passengers to leave its cars, and in the case of female passengers, at least, they have a right to expect aid or assistance from the brakeman or some other employee of the company to assist them in alighting."

In that case it appears that plaintiff was incumbered by quite a number of packages or parcels, one of which was quite heavy. She called for an employee of the company to assist her and he took part of the parcels and placed them on the floor of the station, then turned to render her further aid. But in the meantime she had attempted to descend without awaiting the aid or assistance then at hand. In so doing she had fallen and sustained the injury for which she claimed damages. There was a verdict and judgment for the plaintiff. The judgment was reversed and a new trial ordered because the trial court erred in withdrawing from the consideration of the jury the question of plaintiff's contributory negligence in the manner it did by its instruction.

In the *Werner Case, supra,* the court said, page 305:

"The defendant, as a common carrier of passengers, was certainly bound to provide a safe place for the plaintiff to alight on reaching her destination, and, *in view of her age and condition, to render such reasonable assistance* as to enable her, if in the exercise of ordinary care on her part, to alight from the train in safety." Citing the *McDermott Case, supra.*

The facts in both cases are clearly distinguishable from the facts in the instant case. Neither case is referred to in the later cases of *Gardner v. Chicago & M. E. R. Co., supra,* and

*Dorcey v. Milwaukee E. R. & L. Co., supra.* The law of the later cases is controlling and in accord with the general rule that in the absence of special circumstances, such as the passenger being burdened with parcels, illness, or apparent infirmity, and even though the passenger be a female, there is no duty to assist the passenger in alighting from a train.

In the case at bar, plaintiff testified that there was nothing about her appearance that would lead the conductor to think that she was in need of any help in alighting from the train. She also testified that she did not expect any assistance until she reached the bottom step. At one time she testified she fell from the second from the top step, at another time she testified she fell from the second from the bottom step. While she testified that the conductor had extended his hand to assist her, she also testified that she started to fall before the conductor could take hold of her arm.

If the conductor did nothing as he saw plaintiff alighting and before she started to fall, there would be no violation of any duty he owed to her. Plaintiff makes much of the fact that the conductor extended his hand upward, proffering his assistance in alighting. Assuming this to be true, the conductor would be required to use only ordinary care. 10 Am. Jur. p. 240, sec. 1404. Had the conductor taken hold of plaintiff's arm before she started to fall, or if after extending his hand to assist plaintiff in alighting he had withdrawn the proffered assistance, we would have an entirely different case. No such claim is made and there is no evidence to sustain a finding of such facts. There is no evidence to support the jury's finding of negligence on the part of the conductor. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.