CARMEL R. FANELLI, appellant, v. ILLINOIS CENTRAL RAILROAD
COMPANY and THE PULLMAN COMPANY, appellees.

No. 48637.

(Reported in 69 N.W.2d 13)

662

MARCH 8, 1955.

Loth & Melton, of Fort Dodge, for appellant.

Burnquist, Helsell & Burnquist, of Fort Dodge, and Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellees.

LARSON, J.—This is a personal injury suit resulting from plaintiff's fall while alighting from defendant Pullman Company's coach on defendant Illinois Central Railroad Company's train standing at the depot in Fort Dodge, Iowa. The accident happened on the morning of February 14, 1951, at approximately 11:30 a.m. Plaintiff dozed off about a half hour before the train arrived and did not awaken and alight with other passengers. Fort Dodge being a division of the railroad, the train's departure is delayed some fifteen minutes to change crews. Plaintiff was awakened by the conductor, asked her destination, and advised to alight immediately as the train was ready to pull out. As she started to descend the steps of the coach to the station platform she fell and was injured. She was unable to tell how the accident occurred, and the trial court sustained the motion of both defendants for a directed verdict on the ground that plaintiff had failed to introduce any evidence of the breach of duty toward her as a passenger.

Plaintiff contends the trial court erred in directing a verdict against her for (1) the record allows a jury finding that de-

fendants were negligent because the Pullman porter was not present to assist plaintiff when she was "put off"; (2) the record allows a jury to find the injury was caused by the unsafe and negligent manner and place that plaintiff was "put off"; and (3) the absence of any explanation by defendants accounting for plaintiff's injury while in their care, or the combination of circumstances which led to the injury. We must therefore review the record to determine whether there was such an absence of evidence to justify the trial court's action. While the law and the facts are not greatly in dispute, their effect and the inferences suggested are vigorously argued.

I. The trial court having directed a verdict, the testimony offered by the plaintiff must of course, for the purpose of this appeal, be considered as the established facts of the case. No authority is needed for this rule, but we discuss it in Fitzgerald v. Des Moines City Ry. Co., 201 Iowa 1302, 207 N.W. 602.

II. Negligence is a fault, is not to be presumed, but rather must be proved. That is plaintiff's burden. It cannot be assumed from the mere fact of an accident and an injury. See Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 360, 30 N.W.2d 120, 122, where we said: "If no duty exists there can be no negligence upon which proximate cause may be based and hence no recovery may be had." Also see 38 Am. Jur., Negligence, section 290, page 983. The one exception under the doctrine of res ipsa loquitur we shall deal with later herein.

III. A high degree of care must be exercised by a carrier in foreseeing, as well as guarding against, danger to its passengers. In our recent cases of Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1140, 49 N.W.2d 501, 504, and Murray v. Cedar Rapids City Lines, 242 Iowa 794, 800, 48 N.W.2d 256, 260, we cite with approval the often cited and approved rule set forth in Kliebenstein v. Iowa Railway & Light Co., 193 Iowa 892, 895, 188 N.W. 129, 130, where we said:

"That a carrier of passengers for hire must exercise more than ordinary diligence in the protection of its passengers is a rule well established. The carrier's duty stops just short of insuring the safety of the passenger, and the common expressions of the law on this subject are that the carrier is bound to

protect the passenger as far as human care and foresight will go, and that the carrier is liable for slight negligence."

In other words, the carrier's duty to protect the passenger stops just short of insuring the passenger against injury. Waterloo Savings Bank v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1368, 60 N.W.2d 572, 574. That this is the rule governing the case at hand there can be no doubt.

But we also said in the Murray case at page 800 of 242 Iowa, page 260 of 48 N.W.2d: "A common and proper qualification of the rule under its various statements is that it applies only *to dangers which reasonably and naturally may be anticipated.*" (Emphasis supplied.) 13 C. J. S., Carriers, section 678b; 10 Am. Jur., Carriers, section 1246; Weber v. Chicago, R. I. & P. R. Co., 175 Iowa 358, 364, 151 N.W. 852, L. R. A. 1918A, 626; annotation 69 A. L. R. 980.

What dangers reasonably and naturally may be anticipated herein? The plaintiff had been originally awakened by the porter as requested, had dressed, had her breakfast in the diner, and returned to her made-up section to read. She testified: "About half hour out of Fort Dodge I put on my coat to be ready to get off the train. I must have dozed off, because what I remember again is the conductor shaking my shoulder and asking where I was getting off. I said 'Fort Dodge' and he said 'Well, you'd better hurry because we have been there'—I don't know what length of time—and he said 'we are ready to pull out.'" When she reached for her grips, she testified the conductor said, " 'No, you run on ahead, I'll see that you get your grips.'" She went on out of the car, and he remained to care for her luggage.

The plaintiff, Carmel R. Fanelli, is a young woman 5 feet 3 inches tall, and at the time was wearing a fur coat, and had on shoes with heels about 2 or 2½ inches high. She did not wear glasses, but was a bit hard of hearing. There was no evidence, visible or otherwise, to indicate she had any physical infirmities and none was disclosed to defendants. She had taken that train from Chicago about three times a year for nearly twenty years. She stated on other occasions the porter had assisted her with a movable step. There were four steps on the coach.

The only testimony as to what happened after plaintiff reached the vestibule platform of the coach was related by her.

She said: "I got to the platform and grabbed the rail in order to go down the steps. No one was there; nobody was around at the time. * * * I looked out to see where I was going down. * * * I know I grabbed the rail, and I went to put my foot out, and that's all I remember until I heard a man say: 'Don't pick her up, she is dead.'" As the porter and another trainman picked her up from the station platform she said: "I leaned back * * * against the [Pullman] step and put my hand on the second [from the top] step and it touched something. I looked to see what it was. It was the tip of my heel. As I picked it up, I felt the stairs. They were wet and slippery. * * * And I looked at my hand and it was all dirty and wet." On redirect examination the plaintiff further stated: "I fell from the platform * * * I didn't get a chance to take a step, as I remember. * * * I started from the platform, put my foot from the platform to the first step, and that is as far as I know. I fell forward onto the ground, you know, sideways." She was later assisted into the station and taken home by taxi. No other direct evidence was offered as to the cause of the fall. Defendants urge that plaintiff failed to prove or furnish any evidence tending to prove any culpable negligence on the part of the defendants, or either of them, which was the proximate cause of her injury.

Briefly, plaintiff's alleged grounds of negligence, which she maintains the evidence, viewed in its most favorable light for her, generated a jury question, were that defendants were guilty of a breach of duty, by failing to awaken her a reasonable time before the arrival at the station, by improperly demanding that she leave the train hurriedly, by failing to assist her, a Pullman passenger, in alighting from the coach, by failing to provide a reasonably safe means for passengers to leave the train, by creating dangerous conditions when plaintiff was leaving the train, and generally, by failing to operate the train so as to provide for complete safety of passengers.

The trial court held there was no relevant evidence of the breach of any duty owed plaintiff, specifically as alleged or generally, and that there was no showing of defendants' negligence having a causal connection or which could be the proximate cause of her fall and injury. After a careful review of the evidence,

we must agree. No testimony offered by plaintiff made it reasonably apparent to the employees of the defendants that there were any unusual difficulties or dangers attendant to plaintiff's act of alighting on this particular morning so as to require physical assistance by the defendants. What was the duty owed plaintiff herein, the breach of which would give rise to carrier negligence? What evidence did plaintiff offer disclosing a danger which human care and foresight could reasonably anticipate? Rozmajzl v. Northland Greyhound Lines, Weber v. Chicago, R. I. & P. R. Co., and Murray v. Cedar Rapids City Lines, all supra. When awakened the second time by the conductor, plaintiff did not testify that she became confused, flustered or bewildered, nor that she was disturbed and not in possession of all her faculties when she departed from the coach. The circumstance of being awakened from a nap as a matter of law carries no such implication. It may have been a possibility and plaintiff had the opportunity to so state, when testifying, if such were the facts, but she did not so testify. The same reasoning must be applied to the argument that it could be inferred when she was told to "hurry" or "run along", that she rushed or ran from the car. Obviously that reaction by the plaintiff would disclose a danger of accident, but here again she testified: "I was not running as I went down the steps. I was watching where I was going. I had put my hand on the rail." Such testimony, we believe, clearly fails to indicate a circumstance requiring the conductor to foresee a danger and therefore creating a duty for him to physically assist this obviously able-bodied young woman to alight from the coach. In a manner, however, he did assist her, as by custom most porters assist passengers in attending to and unloading their luggage. Ordinarily custom does not create a duty, though here we find no evidence of custom. 38 Am. Jur., Negligence, pages 1015, 1016.

■■ IV. It is well settled in most jurisdictions that unless assistance is requested by a passenger, or that it would appear evident to a reasonably careful person that the passenger is in need of aid due to age, illness, infirmities, or objects being carried, there is no duty upon a carrier to assist passengers physically to board or alight from a coach or bus. The duty arises when the need becomes apparent, and not before. Olson v. Des

Moines City Ry. Co., 186 Iowa 384, 392, 170 N.W. 466; Ray v. Chicago & N. W. R. Co., 163 Iowa 430, 144 N.W. 1018; Mitchell v. Des Moines City Ry. Co., 161 Iowa 100, 141 N.W. 43; 10 Am. Jur., Carriers, page 227; 55 A. L. R. 389; 13 C. J. S., Carriers, page 1362; 10 Am. Jur., Carriers, pages 230, 231; Wisdom v. Chicago, R. I. & G. Ry. Co., Tex. Civ. App., 231 S.W. 344; Younglove v. Pullman Co., 207 F. 797; Gardner v. Chicago & Milwaukee Electric R. Co., 164 Wis. 541, 159 N.W. 1066, 1067; Smith v. Chicago & N. W. Ry. Co., 246 Wis. 628, 18 N.W.2d 352. We have searched for authorities holding that the carrier owes Pullman passengers a greater duty of assistance in alighting than other passengers, as suggested by plaintiff, but found none. We cannot in reason affirm such a rule, for clearly all Pullman passengers do not require or desire physical assistance in alighting from the coach any more than do passengers in regular coaches. The rule of request or apparent need is sufficiently broad, we think, to cover the legal duty imposed upon carriers. Younglove v. Pullman Co., supra, 207 F. 797, 802; 48 Am. Jur., Sleeping Car Companies, pages 485, 490. The usual services by porters of The Pullman Company include removing passengers' bags and packages, aiding the infirm physically, and giving a hand to passengers as they step from the lower coach step to the movable step placed upon the station platform, as well as other requested services. It is true on this particular morning both the step and the porter were missing, due to the fact no doubt that all the other passengers had left the train some time before. This circumstance and the "wet and slippery" steps, plaintiff says, disclose a breach of duty owed her, and this negligence was a proximate cause of her injury in that had the porter been there he could have caught her and prevented the injury she suffered. We cannot agree that catching falling passengers is one of the usual or customary duties of a Pullman porter. The great difficulty with this argument, as pointed out by the trial court, is that unless she had requested assistance or her need was apparent, the defendants owed her no duty to be at the platform to assist her to alight, and that according to her own testimony her fall was from the coach platform four steps up, and not while she was attempting to negotiate the last coach step to the

ground. The failure of the porter to be in attendance when plaintiff fell, as she started to descend the car steps, was not then the proximate cause of plaintiff's fall and consequent injury. It had no causal connection with her fall or injury.

██ ██ Plaintiff further urges other circumstances were related which under the law established an apparent need of passenger assistance. It is true circumstances attending the alighting may disclose a breach of duty owed the passenger and may result in the establishment of a prima-facie case of negligence in the carrier. If steps over which the passenger must pass are shown to be icy, slick, worn or defective, or the place of alighting hazardous, such circumstances may give rise to an apparent need of passenger assistance over the hazard. Olson v. Des Moines City Ry. Co., supra, 186 Iowa 384, 170 N.W. 466; Wisdom v. Chicago, R. I. & G. Ry. Co., Tex. Civ. App., 231 S.W. 344; Gegere v. Chicago & N. W. Ry. Co., 175 Minn. 96, 220 N.W. 429, and many others. It must be conceded if plaintiff had testified she stepped upon an icy or slippery step while descending from the coach, slipped and fell, a jury question would have been generated, for then an explanation or rebuttal would have been necessary on behalf of the defendant. Such is the effect of the cases cited above. In all such cases, cited by plaintiff, the injured party had slipped and fallen as a result of some such circumstance, and the court held therein the carrier knew or should have known of the defect or hazard and should have furnished passenger assistance over the hazard. In none of them does the court resort to an inference to find that the injured party reached the hazard and was injured. Thus such cases have no application to the case at bar. It may be well to point out that no evidence appears which even tends to prove defendants or anyone else knew or should have known any step was wet or slippery. It is true the porter said, " 'I am sorry, I should have been there to help you' " when he helped pick her up, but this statement, we think, falls far short of an admission of neglect of legal duty. Usually a porter or trainman assists passengers to alight by handing them over the movable step to the station platform, without regard to weather, season or conditions under foot. This is for the reason no handrails are available to aid the

passenger in making that step. Certainly his statement then cannot in reason be found to give rise to an inference that he knew the steps of the coach were hazardous or that he was remiss in a duty to assist plaintiff down the steps. No reason appears why the porter was not called, and therefore such an inference is not justified. Except for plaintiff's meager testimony regarding the second step, the condition of the steps was largely left to inference. She alone testified the second step was wet and slippery to the touch. From that testimony we may of course reasonably infer that step was also slippery under foot, but may we carry that inference to include all the steps? We think not, for inferences ordinarily may not be raised from a fact proved unless there is a rational connection existing between such fact and the ultimate fact inferred. 20 Am. Jur., Evidence, section 159, page 163. An inference must be drawn from the established facts which logically support the same. Smith v. Chicago & N. W. Ry. Co., 246 Wis. 628, 18 N.W.2d 352. No testimony was offered as to the weather, temperature, conditions under foot, or any other material or relevant fact which would aid reasonable men in drawing an inference that the steps were all wet and slippery, to say nothing of inferring that she slipped on one of them. Again, if such facts were necessary, material and relevant to her case, plaintiff must introduce them. We conclude an inference that all the coach steps were wet and slippery is not justified, or that the defendants must be charged with knowledge of such condition under the circumstances disclosed. However, even if it were determined the question of negligence was for the jury, she fails to show it the proximate cause.

V. It is quite true that ordinarily what is the proximate cause of an accident or injury is for the jury to decide, but it is also true mere negligence which appears to have no causal connection with the injury is not actionable. It must appear that the injury was the natural and probable consequence of the negligence, wrongful act or breach of duty. Lindquist v. Des Moines Union Ry. Co., supra, 239 Iowa 356, 30 N.W.2d 120; Aitchison v. Reter, 245 Iowa 1005, 64 N.W.2d 923; Snook v. Long, 241 Iowa 665, 669, 42 N.W.2d 76, 78, 21 A. L. R.2d 1.

Unless then plaintiff shows somehow that she reached the hazardous condition, wherever it was, and where passenger as-

sistance over it was required, there could be no recovery. In fact, there would be no jury question as to whether or not the condition shown required such assistance, for such evidence would be immaterial. The trial court held plaintiff failed to establish any causal connection between the conditions complained of and her injury, and we must agree. Here again plaintiff concedes her direct evidence is slight, but contends by acceptable inferences the connection was established. Plaintiff testified she approached the steps to descend, but did not say she reached the first step. She testified the second step was slippery, and that after her fall she found a broken heel tip from her shoe on the second step. From these facts she contends there arises an inference that she reached the wet step, slipped thereon, broke her heel and fell to the ground. On the other hand she testified, "I fell from the platform * * * I didn't get a chance to take a step, as I remember * * *." Thus it seems idle speculation that she reached the second step, or that any other step was wet and slippery. The finding of a broken heel tip on the second step is not inconsistent with a fall from the platform, and does not infer the heel tip came off at that spot, for we have no evidence as to how or where it was broken. Quite reasonably it could have rolled to that step.

We are not told what caused her to lose consciousness, and while it is true she need not disprove all other possible causes of her fall, it is just as reasonable to infer that she fainted, stumbled, turned her ankle, or broke the heel of her shoe as she turned to descend the steps. Such causes would logically occur to reasonable men as probable, and all such happenings would have been without fault of the defendants. Carriers are not insurers of their passengers, and no legal presumption exists that all unexplained falls are the fault of the carrier. We recited the applicable rule in the case of George v. Iowa & S. W. Ry. Co., 183 Iowa 994, 998, 168 N.W. 322, 323, when we said:

"There is no case for a jury where the evidence leaves the happening of the accident a mere matter of conjecture, and as consistent with the theory of absence of negligence as with its existence. Tibbitts v. Mason City & Ft. D. R. Co., 138 Iowa 178. Undoubtedly, the plaintiff fails if, as [a] matter of law, the testimony is in equipoise [citing cases]."

It may be true that if plaintiff had been for some reason unable to testify, and the circumstances were the same otherwise, the permissible inferences would have required defendant to explain or rebut the prima-facie case of negligence as well as the inferred causal connection with the injury. George v. Iowa & S. W. R. Co., supra. But this is not the case before us. Plaintiff did testify as to the events just before and just after the fall, and her testimony, we think, prevents the operation of the rule announced in the George case. There we indulged in certain inferences where no direct evidence was available as to what happened to the passenger. There was no evidence there except as to the speed of the train and the unballasted roadbed which made the train "sway, jerk, jump" and which reasonably could account for decedent's fall from the train. There we did indulge in the inference that the railroad may have been negligent in running the train over that stretch too fast and, with no other reasonable explanation for the accident and fall, held the facts and permissible inferences generated a jury question on negligence and proximate cause. Here, as previously pointed out, the plaintiff testified, "I fell from the platform * * *" clearly is in conflict with any inference she fell from some other place. Obviously we may not indulge in presumptions or inferences which are in conflict with direct testimony, even in sympathy for one painfully injured. This is so even though we do view the evidence and such inferences as may reasonably be drawn therefrom most favorably to the plaintiff. Could we permit a jury, in the light of plaintiff's actual testimony, to infer that plaintiff went down two steps of the coach, slipped on the spot where she later testified she placed her hand, and thus fell to her injury? We think not, and a verdict rendered upon such evidence alone would have to be set aside.

Recognizing her duty to show negligence on the part of the defendants, and then to establish a causal connection with the accident and injury, plaintiff testified as to the events up to and after the fall. She leaves the causal connection entirely to speculation, which however was rather effectively rebutted by her own testimony. We find a similar case in Gardner v. Chicago & Milwaukee Electric R. Co., 164 Wis. 541, 543, 544, 159

N.W. 1066, 1067, where the Wisconsin Supreme Court in reversing a lower court judgment for the plaintiff said:

"The jury not only found there was a defect, but that it had existed so long that the defendants in the exercise of ordinary care ought to have discovered the defective condition in time to have prevented the injury. To our minds both findings rest upon conjecture. There is nothing in the evidence that furnishes any basis for a reasonably certain correct conception of the nature of the alleged defect, much less of its duration. Plaintiff, herself, is compelled to resort to an alternative, for she says her heel either sank in or was caught by something, but how or why it sank in or how or why it was caught we do not know. * * * We can guess that it consisted of this or that defect, but we do not know which. Or the step may not have been defective at all, for plaintiff may have fallen as she described without any actionable defect therein. Verdicts cannot rest upon conjecture."

There too was a young able-bodied woman who stepped from the coach platform squarely on the first step, and as she started to take the next step she said her heel caught and she fell. No one saw the mishap; she did not look at the place where she fell before or after the fall; there was also no other evidence of a defect in the step offered; and she also failed to state her foot slipped. There the court concluded:

"In our view of the case * * * giving, as we do, full credence to plaintiff's own testimony we hold that it fails to establish a cause of action."

We here conclude the inferences plaintiff now wishes to aid her in establishing causal connection are not justified, amount to little more than conjecture and are rejected by her own direct testimony.

VI. From what has been said, it must be clear the doctrine of res ipsa loquitur is not applicable. It is conceded by defendants that they were in control of the coach plaintiff was leaving, though it was not in operation at the time. It was stationary at the depot. There is no showing by plaintiff as to what caused her to fall. Both are necessary elements to place upon defendants the burden to absolve themselves from liability for the damage. 10 Am. Jur., Carriers, pages 366, 370; 13 C. J. S.,

Carriers, pages 1455, 1460. The facts and circumstances accompanying the injury must be shown. 38 Am. Jur., Negligence, section 295, page 989; Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, and cases cited therein; Whitmore v. Herrick, 205 Iowa 621, 218 N.W. 334; Nicoll v. Sweet, 163 Iowa 683, 144 N.W. 615, L. R. A. 1918C 1099, Ann. Cas. 1916C 661; Dodge v. McFall, 242 Iowa 12, 45 N.W.2d 501.

We agree with the trial court when it said: "She had established that an accident occurred, but has not established how it occurred; and this is essential if the doctrine of res ipsa loquitur is to apply." Her failure to show the cause of her fall leaves nothing upon which the doctrine can operate.

We find in 13 C. J. S., Carriers, at page 1460, the following: "Negligence is not inferable from the fact that a passenger fell in alighting from a car because of the height of the running board. A passenger, catching his foot on a step while alighting from a vehicle, must prove that the injuries were caused by a visible defect which the carrier could have discovered."

While we do not hold res ipsa loquitur is not applicable to such cases, we agree with the trial court that the facts and circumstances here related will not justify its application.

In the case of Gardner v. Chicago & Milwaukee Electric R. Co., supra, 164 Wis. 541, 544, 159 N.W. 1066, similar to the case at bar, the court discusses the related circumstances and states: "Verdicts cannot rest upon conjecture. * * * This is not a case of res ipsa loquitur, but an ordinary negligence case in which the burden rests upon the plaintiff to show to a reasonable certainty the nature and character of defendant's negligence."

We said in Dodge v. McFall, supra, on page 14 of 242 Iowa, page 502 of 45 N.W.2d: "* * * he must establish the way the injury occurred as well as defendant's control of the instrumentalities involved. "* * * the doctrine of res ipsa loquitur does not raise any presumption as to what did occasion the injury; but, after the evidence has established the thing which did occasion the injury, then, under certain circumstances, this doctrine will raise a presumption of negligence.' "

We deem it unnecessary to extend this opinion further by

discussing the many cases cited by able counsel upon the exercise of due care by carriers. In every case cited by plaintiff there appeared positive evidence of the cause of the accident or fall, and a breach of some duty by the defendant carrier which had a causal connection to the injury. In the cases cited by defendants, on the other hand, there was a failure to show a breach of duty or a causal connection between that breach and the injury. All seem to agree on the rule as set out herein as to the high degree of care and foresight required of carriers, though not to the extent of making them insurers. Such would be the case herein if we were to reverse the trial court's judgment.

In conclusion we must also hold, plaintiff having failed to show by relevant evidence any actionable negligence on the part of either defendant, or to establish any causal connection by facts or proper inferences between her injury and any breach of duty legally due her by defendants, the action of the trial court in directing the verdict for defendants and in denying plaintiff a new trial must be affirmed.—Judgment affirmed.

WENNERSTRUM, C. J., and BLISS, GARFIELD, OLIVER, SMITH, and THOMPSON, JJ., concur.

MULRONEY and HAYS, JJ., dissent.

MULRONEY, J. (dissenting)—I respectfully dissent. As I read the majority opinion it holds the evidence, viewed in the light most favorable to plaintiff, fails to make out a prima-facie case of slight negligence. It goes on to hold plaintiff also failed to establish a prima-facie case of proximate cause. I feel the evidence here sufficient to make out a prima-facie case on both issues.

I. I would hold a prima-facie case of slight negligence was established by the evidence of wet slippery steps and the evidence of failure to assist plaintiff who was required to use them to get off of the train. We must bear in mind that here we are discussing the issue of negligence only. The question of proximate cause, which in this case means whether she did tread on the slippery steps without assistance, and slip and fall, will be dealt with in the next division. The majority often intermingles the two issues.

Plaintiff testifies: "I felt the stairs. They were wet and slippery." She does not say at any place in her testimony that she felt any certain step, though it could be inferred she felt the second step, for she thinks the tip of her heel was on that step and she says she "felt the stairs" as she picked it up. The majority, though charged with the duty of construing her testimony in the light most favorable to her, holds this evidence shows no more than a wet slippery second step. Though she said the "stairs" were wet and slippery, the majority says her "meager testimony" carries no "inference to include all the steps." The very definition of the word "stairs" is a series or combination of steps. Webster's New International Dictionary. I am of the opinion under the facts of this case, even under the majority rigid construction of the evidence against her, plaintiff would establish a prima-facie case of negligence if she testified one step was wet and slippery. But it would not be too much to ask that the words she used be given an ordinary dictionary meaning.

In Prescott & N. W. R. Co. v. Thomas, 114 Ark. 56, 167 S.W. 486, the alleged negligence was the leaving of cantaloupe seeds on one of the steps of the train, and this was held sufficient to establish negligence. In Wisdom v. Chicago R. I. & G. Ry. Co., Tex. Civ. App., 231 S.W. 344, 345, there was evidence that one car step was "old and worn slick" and the court held from this evidence "the jury might have reasonably inferred * * * that in furnishing a step in that condition defendant in error did not exercise that high degree of care for her safety which it was required to exercise in furnishing her facilities to alight from its train."

The general rule as to a prima-facie case where the negligence asserted is ice or snow on the train steps is applicable here and is well stated in the following quotation from Gegere v. Chicago & N. W. Ry. Co., 175 Minn. 96, 99, 220 N.W. 429, 430: "Since a common carrier is held to the highest degree of care in the protection of passengers while upon the journey and while entering and leaving the conveyance it would seem reasonable to hold that where the proof shows ice or snow upon the platform or steps of a railroad coach it requires the carrier

to explain or rebut the inference of negligence which arises from the presence of a substance which may imperil the safety of the passengers."

Actually the question of whether plaintiff's testimony would warrant the inference that one or all steps were wet and slippery would go to the question of proximate cause only. The stairs would be unsafe in either instance and the only question would be whether the negligence was the proximate cause of the injury.

II.  We have then a case which would permit a finding, I think, that all the steps were wet and slippery, but at least that one was. The next inquiry is whether there was a duty to assist the passenger compelled to use these stairs. The majority concludes as a matter of law there was none. All authorities hold this would be a question for the jury. We start with the proposition that there is no general duty on the part of a carrier to assist passengers alighting from trains. But the general rule is met instantly with the qualification that the duty to assist is present when circumstances indicate the passenger requires assistance. Whether the circumstances indicate assistance is required is a jury question. In other words, in this area the jury finds both the rule and whether or not it was observed. This is pointed out in Tulsa Yellow Cab, Taxi & Baggage Co. v. Salomon, 181 Okla. 519, 75 P.2d 197, where the question was as to the duty to assist a passenger over a wet slippery step. The rule of the case on this point is well stated in the syllabus: "Where standard of duty of care is not fixed, but variable, and shifts with circumstances, it is incapable of being determined as a matter of law and must be submitted, where there is sufficient evidence, to jury for determination."

In Olson v. Des Moines City Ry. Co., 186 Iowa 384, 391, 170 N.W. 466, 468, we stated the rule and the duty to submit to the jury as follows: "The rule, stated broadly, is that it is the duty of the carrier's employees to assist a passenger in alighting from a car whenever the circumstances attending the passenger are such as to indicate that she requires such assistance. This may be due to the place at which she is required to alight, the unusual dangers and difficulties that attend alighting at the place;

*or it may be due to the means which are afforded for alighting."*
(Italics supplied.)

The passenger's physical condition is only one example for the application of the rule that the carrier owes a duty to assist a passenger. In the Olson case we went on to say: "The duty arises only when the circumstances are such as, supposing him [carrier's employee] to be a reasonably careful, prudent, and intelligent person, to suggest to him the need of such assistance. Whether the evidence suggests such need is for the jury."

Most authorities would substitute "very careful" for "reasonably careful" in the above statement of the rule. See San Antonio Traction Co. v. Flory, 45 Tex. Civ. App. 233, 235, 100 S.W. 200, 201. In the San Antonio case where the charged negligence was the carrier's failure to assist a passenger over a muddy slippery step the court said: "The rule [duty to assist], upon principle, is the same whether the appearance of danger arises from the condition of the passenger, or from the condition of the means of egress."

In Tulsa Yellow Cab, Taxi & Baggage Co. v. Salomon, 181 Okla. 519, 521, 75 P.2d 197, 199, the only element was a slippery taxicab step and the court held it was for the jury to say whether the cabdriver should have assisted the passenger. The opinion quotes with approval the following text authorities: "In 2 Hutchinson on Carriers, 1329, the author says: 'Whether the circumstances are such in a given case as to suggest the necessity of assisting a passenger to alight is a question for the jury.' A statement to the same effect is found in Moore on Carriers, page 682: 'Ordinarily, whether or not assistance should be rendered by the carrier's employee to a passenger in a given instance is a question for the jury under the circumstances of the case.'"

To the same effect see Wisdom v. Chicago R. I. & G. Ry. Co., Tex. Civ. App., 231 S.W. 344; Chalker v. Detroit, G. H. & M. Ry., 207 Mich. 138, 173 N.W. 532; Prescott & N. W. R. Co. v. Thomas, 114 Ark. 56, 167 S.W. 486. As stated in the San Antonio Traction Company case, supra, the rule is the same as that applied "where the car is stopped so that the descending passenger would step into a dangerous place." We applied the rule to such a case in McGovern v. Inter Urban Railway Co., 136 Iowa 13, 21, 111 N.W. 412, 415, 13 L. R. A., N. S., 476, 125 Am.

St. Rep. 215, and there said the trial court was right when he "left it for them [the jury] to say whether there was negligence on the part of the defendant's conductor in not giving plaintiff assistance." A case somewhat in point is Vanderbeck v. Chicago, M., St. Paul & P. Ry. Co., 210 Iowa 230, 235, 230 N.W. 390, 393, where in the course of the opinion we said: "The passenger is entitled to a safe exit at a safe place, and to such assistance as is necessary for that purpose."

In the majority opinion it is stated: "No testimony offered by plaintiff made it reasonably apparent to the employees of the defendants that there were any unusual difficulties or dangers attendant to plaintiff's act of alighting on this particular morning so as to require physical assistance by the defendants." What about the evidence of the admission of the porter: " 'I should have been there to help you.' " Surely this permits the inference that he knew the steps were wet and slippery and the duty to assist was present. In any event there was firm testimony of a wet slippery step or stairs and under the authorities cited that evidence alone rendered the question of whether there was a duty to assist a passenger using them a jury question.

From the above it will be seen the only question for the court on the duty to assist an alighting passenger is the sufficiency of the proof of circumstances—whether the proof of circumstances would permit a jury to find a duty to assist was required. Here we have it established one or all the steps were wet and slippery and the court holds as a matter of law there was no duty to assist the alighting passenger over them. In addition we have the testimony of the porter: " 'I should have been there to help you.' " There is the evidence of the taxicab driver who took her home who testified without objection that plaintiff told him the porter said to her that "it was his fault, he should have been there to assist her off of the train, but he wasn't." If this is not sufficient proof of circumstances to warrant submission to a jury the question of necessity to render assistance to an alighting passenger, I fail to see how one could ever be made out. Not a case cited in the majority opinion supports the conclusion that, as a matter of law, there was no duty to assist.

III. This brings us to the question of proximate cause which in my opinion is the only question in this case. The ma-

jority, by taking certain statements of plaintiff out of context, concludes plaintiff fell off of the platform without treading on any of the steps. It is true that at one point when she was asked if she knew how far she fell she said she fell off of the platform, but I think you have to look at all of her testimony. Her testimony with regard to falling off of the platform is:

"Q. Do you have any idea how far you fell? A. I fell from the platform of that—I didn't get a chance to take a *step, as I* remember. Q. That is, you fell from the top platform of the Pullman car? A. Yes; put my foot down and that is the furtherest I got. I started from the platform, put my foot from the platform to the first step, and that is as far as I know. I fell forward onto the ground you know, sideways." At another point she said: "I know I grabbed the rail, and I put my foot out, and that's all I remember until I heard a man say: 'Don't pick her up, she is dead.' I don't know what happened in that time, honestly."

At another point she was asked: "As I understand your testimony *when you went down the steps* there wasn't anybody on the platform?" Her reply was that she "saw a few men out a little ways." (Italics supplied.)

At another place she said: "I was *not* running as *I went down the steps.* * * * I had my hand on the rail." (Italics supplied.)

In addition to this we have the testimony of the finding of the tip of the heel of plaintiff's shoe on one of *the steps.* She said she thinks this was on the second step but she could not "say positively" it was that step.

What does this evidence, construed in the light most favorable to the plaintiff, add up to? We know she fell down a stairs where one or all steps were wet and slippery. We know she had grasped the handrail along the side of the stairs. She says she "started [down] from the platform" putting her "foot from the platform to the first step." Things happened quickly then and she says "that is as far as I know" but the tip of the heel of her shoe is found on the wet slippery step. But the majority goes back often and quotes the five words "I fell from the platform"

without her following explanation that she meant she had stepped off of the platform to the steps. The majority opinion states: "It must be conceded if plaintiff had testified she stepped upon a * * * slippery step while descending from the coach, slipped and fell, a jury question would have been generated." Such testimony would not be "meager" according to the majority view. But plaintiff was not compelled to establish proximate cause by direct evidence. She did not testify she fell before reaching the slippery steps. She says she does not remember after putting her "foot [down] from the platform to the first step." Proximate cause can be established wholly or partly by circumstantial evidence. A circumstance that is established is that the tip of her heel was found on one of the wet slippery steps near the top of the stairs. The majority holds that because she was unable to remember exactly what happened in the split second as she started down from the platform, and lost her footing and fell, she cannot recover. The majority brushes aside the finding the tip of her heel on the step by saying the jury could "not infer the heel tip came off at that spot * * *. Quite reasonably it could have rolled to that step." What the majority means is that the jury would be *compelled* to find it broke off on the platform and *rolled to that step*.

Plaintiff did not have the burden of establishing her theory: that the accident was caused by her treading on wet slippery steps, beyond a reasonable doubt. We know that in some manner she lost her footing on wet slippery steps. She did not have to foreclose every other possibility. She makes out a prima-facie case when she shows the thing that happened, the fall down the stairs, might well result from treading on wet slippery steps without assistance. It is idle to theorize as does the majority here that she might have "fainted, stumbled, turned her ankle, or broke the heel of her shoe as she turned to descend the steps."

In George v. Iowa & S. W. Ry. Co., 183 Iowa 994, 998, 1000, 168 N.W. 322, 323, 324, we said plaintiff was not required "to prove either negligence or proximate cause, beyond a reasonable doubt; and, where the proven circumstances are such that different minds may reasonably draw different conclusions, or where all the known facts point to the negligence of the defend-

ant as the cause, then, though the evidence be wholly circumstantial, proximate cause is for a jury."

The above case is closely in point. There the evidence only showed an unballasted roadbed and conditions generally that would make a train sway, jerk and jump, which would make it possible that one on the train would be thrown from it. In this George case the passenger was killed and there was no evidence the roughness and swaying of the train did actually cause him to fall, but we said that question was for the jury, the opinion stating: "The paramount question is whether the jury could legitimately infer, honestly using such abilities as they had, that the circumstances indicated that the condition of the track threw the decedent from the engine. We think that question was for the jury."

The majority indulges in that time-honored theory so often advanced by defendants in "falling" cases, that plaintiff "may have fainted", and complains that we are not told "why the plaintiff lost consciousness." The parties to this appeal with commendable observance of the rules of appeal stated in the record there was no need to set forth the medical testimony, said to be "sufficient to show substantial injury." Surely it should not do violence to the majority's concept of a permissible inference to say she was knocked unconscious by the fall. She testified when the trainmen picked her up: "I was dazed."

The breaking off of the heel of plaintiff's shoe was one of the established facts of this case. Where and how she broke it off is not shown. Would it not be a legitimate inference that she broke it off when the heel slid into the back or side of the wet slippery step on which it was found? Or on the step above, which under her testimony that the "stairs" were wet and slippery was also a slippery step? Why would a jury have to find it broke off on the platform and rolled to the second step?

The majority says maybe she stumbled or turned her ankle while still on the platform. The possibilities for theorizing are almost endless but the majority states these theories: fainting, stumbling, turned ankle, and broken heel, while still on the platform, are "causes [that] would logically occur to reasonable men as probable" while plaintiff's theory that she slipped on wet slippery stairs would be "idle speculation."

The majority states the correct rule at the beginning of Division V: "It must appear that the injury was the natural and probable consequence of the negligence * * *." But the majority fails to apply it. The majority applies the rule that if the evidence would support two theories, one of which shows fault and a differing theory involving no negligence, then the jury's answer would be mere conjecture. This rule is not applied where there is no evidence of a differing theory. Plaintiff's theory of the case is that she slipped and fell on wet slippery steps. It is common knowledge that people do slip and fall on wet slippery steps. Falling down a stairway is a reasonable occurrence when the stairway is wet and slippery. She is not called upon to negative all the possible theories the defendant can think of that might have caused the mishap, other than the wet slippery steps. This distinction is pointed out clearly in the George case, supra, where it was urged the workman might have fainted and fallen off of the train. There we said at pages 1001 and 1002 of 183 Iowa:

"But if the plaintiff shows that what the defendant did might accomplish what plaintiff suffered, it does not take the case from the jury merely because it is *possible* that the act of the defendant may not have been the cause—that it is possible that something else caused the injury. If, in the case before us, there were any evidence from which a jury could find the existence of some disease which might have caused decedent to stagger and fall off the train, there would be evidence of two equally adequate causes, and the testimony might be in equipoise, as matter of law. In the case supposed, one theory would, as matter of law, be as strong as the other. But it is only when the opposing theories have equal support as matter of law that it becomes the duty of the court to direct a verdict against the plaintiff. The case before us makes the line of demarcation clear. The plaintiff showed that something existed which could throw a man off the train; that one who had been on the train was lying on the ground dead, with wounds and contusions upon him; and these and other things disclosed circumstances indicating that decedent came in contact with a post placed close to the track. The jury could, in reason, find that the condition of the track, the

act of the defendant, could and did initiate the injury suffered; and placing the post where it was, completed the injury. The defendant merely responds that all this might as well have happened if some adequate illness had caused decedent to stagger, and so to fall off the train. The difficulty is, there is no evidence from which the jury could find that any disease existed—that plaintiff shows an efficient cause for the injury suffered; while the defendant theorizes upon what would be the state of the case if it, too, had shown a differing adequate cause, involving no negligence on its part. With nothing to meet the showing by plaintiff that negligence on part of defendant was adequate to cause the injury sustained, except a claim that the same injury might have resulted from an imagined cause which, if existing, would be adequate, it was for the jury to say whether the theory advanced by plaintiff was sustained by the evidence. Therefore, it was error to direct a verdict for defendant."

In Whetstine v. Moravec, 228 Iowa 352, 364, 291 N.W. 425, 431, many of the prior decisions of this court are reviewed respecting the quantum of proof necessary to establish proximate cause. There we held the plaintiff was not bound to "disprove every suggested cause."

As I have stated, I think the only question that is at all close in this case is the question of proximate cause. I think plaintiff's testimony that the "stairs * * * were wet and slippery" makes out a prima-facie case of negligence. On the question of the showing of proximate cause the majority interprets her testimony as showing she fell off of the platform before she reached the stairs. I think she explains her testimony that she fell from the platform by saying she means she "put her foot from the platform to the first step." Perhaps she did have one foot on the platform but it fairly appears she had put the other foot down to the step. The injury was one that could reasonably flow from wet slippery stairs. I would hold a jury question was generated on the issues of negligence and proximate cause.

HAYS, J., joins in this dissent.