Mark A. GEHL, by his Guardian and Conservator, Diane R. REED and Louis D. and Diane R. Reed, Appellant,

v.

The SOO LINE RAILROAD COMPANY, Appellee.

No. 91–2299.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1991.

Decided June 22, 1992.

John J. Gajdel, Des Moines, Iowa, for appellant.

R. Todd Gaffney, Des Moines, Iowa, for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Mark A. Gehl was struck by a train in Clinton, Iowa, and sued the Soo Line Railroad Company for negligence. Gehl appeals the adverse judgment entered on a jury verdict for Soo Line after a five-day trial. Gehl argues that he deserves a new trial because the district court[1] erred in excluding evidence and in refusing to submit his failure-to-warn theory to the jury. We affirm.

I.

On the evening of August 24, 1986, Gehl and his friend Brian Vogel were running their two dogs along the Soo Line tracks in an area of Clinton known as Deer Creek, a popular recreation spot despite a "No Tres-

---

1. The HONORABLE RONALD E. LONGSTAFF, Magistrate Judge for the Southern District of Iowa, presided over this case pursuant to 28 U.S.C. § 636(c)(1). On November 5, 1991, Judge Longstaff was appointed United States District Judge for the Southern District of Iowa.

passing" sign marking the train tracks. Gehl and Vogel had been to that area several hundred times previously, including times when trains passed.

At this time, a mile-long Soo Line freight train was headed toward Deer Creek at about 40 mph, a speed consistent with the railroad's timetable and applicable federal regulations. As the train approached Clinton, the engineer and brakeman, who had made this run several times a week for years, noticed pedestrians near the tracks, activated the train's warning bells, and began slowing down. The train was then about a mile-and-a-half from the rail yard in Clinton.

Moments later, the train rounded a curve and Gehl, Vogel, and their dogs came into view, about a quarter-mile away. The dogs were a hundred yards or so in front of their owners and running toward the train. The engineer began blowing the train's whistle in addition to ringing its warning bell. By now, the train was inside the Clinton city limits and traveling about 34 mph; the rail yard was 3,000 feet ahead.

Gehl and Vogel heard the train before it rounded the curve and began calling their dogs back. When they saw the train, they chased the dogs for about twenty yards but then retreated to the side of the tracks because, according to Vogel, "it didn't seem like a good idea to run at a train." Vogel, who was ahead of Gehl, grabbed his dog from in front of the train and pulled it to safety. He had a chance to reach for Gehl's dog, Bruno, but thought it was too risky. The train had closed the gap, and Bruno was running between the rails.

The trainmen saw Gehl and Vogel retreat to safety and continued their normal slow-down into the yard.[2] However, when Gehl was about twenty yards in front of the train, he suddenly reached onto the tracks to grab Bruno. The engineer activated the train's emergency brakes, but Gehl was struck and thrown about thirty feet into the trackside weeds. The train was traveling 27 to 28 mph; it finally stopped 780 feet after the impact. The accident left Gehl brain damaged. At the time of trial, he was unemployed, living with his mother, and receiving regular medical attention.

Gehl sued Soo Line for negligence, alleging failure to warn pedestrians of the danger in the Deer Creek area, failure to operate the train at a safe speed, failure to provide adequate training for its employees, and failure to act appropriately in an emergency. Prior to trial, Soo Line moved to exclude evidence of (i) a local Clinton ordinance prohibiting trains from exceeding 20 mph anywhere within city limits, and (ii) a 1988 U.S. Department of Transportation Safety Assessment of the Soo Line system. Soo Line argued that the 1964 ordinance was never approved by the Iowa Commerce Commission or its successor, the Iowa Department of Transportation, as required by state law, and therefore was preempted by federal regulations issued under the Federal Railroad Safety Act. 45 U.S.C. § 421 *et seq.* It argued that the Safety Assessment was irrelevant and unduly prejudicial. The district court excluded the ordinance and the Safety Assessment.

Although it excluded evidence of the Clinton ordinance, the district court permitted Gehl to introduce evidence that the train's speed was unreasonable. In response, the train's engineer explained why he did not apply the emergency brakes until Gehl suddenly reached for Bruno. The train's brakeman and conductor, as well as a Soo Line expert, testified that the engineer acted appropriately, and that the train was traveling at a reasonable speed.

At the close of trial, the court submitted all of Gehl's theories of negligence except failure to warn. The jury returned a verdict for Soo Line. The district court denied Gehl's motion to vacate its judgment and order a new trial, adhering to its previous evidentiary rulings and concluding that the verdict "was clearly supported by the

---

**2.** They later testified that they did not apply the emergency brakes because emergency braking frequently leads to dangerous derailments and because animals usually heed the whistle blasts and avoid being run over.

greater weight of the evidence." This appeal followed.

## II.

■ A. Gehl first argues that the district court erred in refusing to submit to the jury the issue whether Soo Line had failed adequately to warn him and others of the "dangers, hazards and unsafe conditions arising out of the operation of [its] trains." In denying Soo Line's motion for directed verdict, the district court ruled:

> The court finds that the plaintiff has made a submissible jury case on the issues of speed, training and failure to act appropriately in an emergency situation, so I would submit the case on that basis.

Gehl argues that, in refusing his requested failure-to-warn instruction, the district court improperly granted Soo Line a directed verdict on this issue.

Although Gehl could not recall the accident, Vogel testified that he knew the "No Trespassing" sign warned of the danger of trains. Vogel also knew of this danger from their previous trips to the area and was not surprised when they encountered a train. According to Vogel, the train's whistle blew—"long, loud bursts"—as many as fifteen times as the train approached. Vogel and Gehl heard the warning whistle, saw the approaching train, and initially moved safely off the tracks. Vogel testified that, in his view, it was far too risky to reach over the tracks to grab Bruno.

Under Iowa law, a property owner owes no duty to a trespasser other than to exercise reasonable care to avoid causing injury when the trespasser is discovered in a perilous position. *See Reasoner v. Chicago, R.I. & P.R.R.*, 251 Iowa 506, 101 N.W.2d 739, 746 (1960). When the landowner knows that trespassers regularly use the property, they may become licensees who must be warned of dangerous activities or conditions that are not known or obvious:

> The duty to warn, however, exists only with respect to latent dangers, not to those which are or ought to be obvious to the invitee. To sustain a charge of negligence the unsafe condition relied on must be one of which the owner knew or should have known, and the invitee did not know and could not reasonably have discovered.

*Atherton v. Hoenig's Grocery*, 249 Iowa 50, 86 N.W.2d 252, 255 (1957). *See Mundy v. Warren*, 268 N.W.2d 213, 218 (Iowa 1978). Here, of course, the danger was both known and obvious, and Soo Line gave specific and timely warnings by repeatedly sounding the train's warning whistle.

Gehl presented the testimony of a "human factors engineer" that people always underestimate the speed of approaching trains and therefore Gehl no doubt misperceived the danger of attempting to retrieve his dog. Plaintiff's "railroad safety expert" also testified that even experienced railroad crews tend to misperceive train speed. We agree with the district court that this testimony was insufficient to make failure to warn a submissible issue. As Vogel's eye-witness testimony made clear, the danger was known and obvious, and Soo Line gave both a general warning—the "No Trespassing" sign—and specific warning whistles from the approaching train. Gehl presented no evidence of a specific additional warning that might have averted the accident. As there was no credible evidence to support this additional theory of negligence, Gehl's requested instruction was properly denied. *See Gander v. Mr. Steak of Sun Ray, Inc.*, 774 F.2d 920, 924 (8th Cir.1985).

■ B. Gehl argues that the district court erred in excluding the Clinton speed ordinance as federally preempted under 45 U.S.C. § 434 because it was never approved by the State of Iowa. Gehl asserts that he was entitled to introduce the ordinance as evidence that Soo Line was negligent per se in operating the train above 20 mph at the time of the accident. *See Machmer v. Fuqua*, 231 N.W.2d 606, 607 (Iowa 1975). We conclude that we need not reach these issues because the evidence established, as a matter of law, that the train's speed was not a proximate cause of

the accident.[3]

Gehl had the burden of proving that excessive train speed was a proximate cause of his injuries. Although proximate cause is typically an issue for the jury, " 'There is no case for a jury where the evidence leaves the happening of the accident a mere matter of conjecture and as consistent with the theory of absence of negligence as with its existence.' " *Fanelli v. Illinois Central R.R.*, 246 Iowa 661, 69 N.W.2d 13, 19 (1955), cited in *Tryon v. First Nat'l Bank of Sibley, Iowa*, 462 F.2d 217, 220 (8th Cir.1972).

Shortly after the train came into view, a quarter-mile away, Gehl and Vogel left the tracks for a place of safety. They remained there until Gehl suddenly reached over the tracks for his dog when the train was only twenty yards away. At that point, the evidence is uncontradicted that the train could not have stopped before impact unless it was travelling well below 20 mph. For example, on cross examination, Gehl's railroad safety expert testified:

Q: [A]t five miles per hour when Mark Gehl reaches in front of the train 20 yards from it, the train can't stop in 20 yards at anything above five miles an hour, can it?

A: That['s] correct.

The jury also heard testimony that, at 20 mph, it would have taken the train eighteen additional seconds to cover the quarter-mile between the curve and the point of impact. But there was no evidence that either the dog, Gehl, or the train crew would have behaved differently—and avoided the accident—but for the train's excessive speed. No witness estimated how much more time Gehl would have had to snatch Bruno safely from the tracks if the train had been travelling 20 mph. And the train's brakeman denied on cross-examination that a slower train speed would have avoided the accident:

Q: [C]ouldn't you have just increased that [brake] application, slowed that train down another ten or 15 miles per hour, and then the boys would have had plenty of time to get the dogs and themselves out of harm's way and we would never be here and this would never have happened? Isn't it a possibility that that could have been done?

A: No, I don't believe so, because the boys—the last we saw of the boys they were in a safe position, they had gotten off the tracks. They were away from the tracks and out on the rocks and they were in a safe position.

Thus, the question whether the accident would have been avoided had the train been going 20 mph the previous quarter-mile was left to conjecture, which is insufficient to prove proximate cause under Iowa law.

In these circumstances, even if the Clinton 20 mph ordinance established that Soo Line's train speed constituted negligence per se, Gehl failed to prove that excessive speed was a proximate cause of his injuries. *Compare Peterson v. Taylor*, 316 N.W.2d 869, 876 (Iowa 1982); *Garner v. Missouri Pac. Ry.*, 210 Ark. 214, 195 S.W.2d 39, 40 (1946). Therefore, any error in failing to admit the ordinance into evidence was harmless.

■ C. Finally, Gehl argues that the district court improperly excluded the 1988 Safety Assessment. The court ruled that Gehl's experts could rely on the study in forming their opinions but excluded the sixty-six page document because "any probative value of this evidence would be outweighed by its prejudicial effect." *See* Fed.R.Evid. 403.

The Safety Assessment was based on a 1987 Federal Railroad Administration study of the Soo Line's general safety performance record. The study was conducted more than one year after the accident occurred. The Assessment did not discuss

---

**3.** The Trial Lawyers for Public Justice, P.C., and the Association of American Railroads have submitted amicus briefs addressing federal preemp-

tion. We decline to reach this important question since it would not affect the outcome of Gehl's appeal.

the accident at issue, or any accident involving pedestrians, or safety procedures in comparable situations. It did recite that Soo Line had a comparatively high system-wide accident rate, and it made a number of recommendations that Soo Line subsequently implemented, such as the institution of training and safety audit programs.

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." " 'Unfair prejudice' ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Rule 403 Advisory Committee Notes.

The district court has broad discretion to exclude evidence under Rule 403. *See, e.g., Steele v. Van Buren Public School Dist.,* 845 F.2d 1492, 1496 (8th Cir.1988). There is a danger that government reports, even if not particularly probative, will nonetheless sway the jury by their "aura of special reliability and trustworthiness." *City of New York v. Pullman Inc.,* 662 F.2d 910, 915 (2d Cir.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982); *see also Bright v. Firestone Tire & Rubber Co.,* 756 F.2d 19, 23 (6th Cir.1984). We conclude that the district court committed no "clear and prejudicial abuse of discretion" in excluding the marginally relevant and clearly prejudicial Assessment. *E.I. Du Pont de Nemours & Co. v. Berkley & Co.,* 620 F.2d 1247, 1272 (8th Cir.1980).

The judgment of the district court is affirmed.